IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

**COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC.
a/s/o ARBOR PARK TOWNHOMES ASSOCIATION, INC.**

      Plaintiffs,

v.

**BRASSCRAFT MANUFACTURING COMPANY**

      Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, Community Association Underwriters of America, Inc. as subrogee of Arbor Park Townhomes Association, Inc. ("Plaintiff"), by and through undersigned counsel, Poynter Law LLC, hereby demands judgment against Defendant, Brasscraft Manufacturing Company ("Defendant"), and in support thereof complains as follows:

### PARTIES

1. Plaintiff is a commercial entity organized and existing under the laws of Delaware; its principal place of business is at 2 Caufield Place, Newton, Pennsylvania 18940.

2. At all relevant times, Plaintiff was authorized in Colorado to provide the insurance policy described herein.

3. At all relevant times, Plaintiff provided a policy for property (*inter alia*) insurance to Arbor Park Townhomes Association, Inc. ("subrogor") in connection with (*inter alia*) its property at 2020 Arbor Park Drive in Basalt, Colorado ("subject property").

4. In the wake of the incident described below, as a result of claims made on said

policy (which were paid consistent therewith), Plaintiff became subrogated to certain recovery rights and interests of subrogor (i.e. for monies paid under the policy), including the claims asserted in this action.

5. Upon information and belief, Defendant was at all relevant times a Michigan corporation with its principal place of business at 39600 Orchard Hill Place, Novi, Michigan 48375.

6. Also at all relevant times, Defendant was engaged in the business of designing, manufacturing, assembling, inspecting, marketing, selling and/or distributing (*inter alia*) flexible toilet-supply lines, including the line that is the subject of this action ("product").

## JURISDICTION AND VENUE

7. Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states; moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

8. Venue is proper in this district based on 28 U.S.C. §1391(a) in that the events giving rise to this claim occurred within this district.

## FACTS

9. Plaintiff incorporates by reference the preceding paragraphs as though set forth at length herein.

10. On April 8, 2020, the product failed and leaked water; this caused subrogor to sustain damage to its property, as well as the imposition of additional expenses besides, in an amount in excess of $100,000.00.

11. Thereafter, subrogor submitted claims to Plaintiff pursuant to the aforementioned policy; Plaintiff paid such claims consistent therewith, thereby becoming subrogated to the

recovery being pursued in this action.

## COUNT I – NEGLIGENCE

12. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

13. Defendant owed a duty of reasonable care to subrogor in regard to the design, manufacture, assembly, testing, inspection, marketing, sale, and distribution, *inter alia*, of the product.

14. As described herein, Defendant breached such duty, which resulted in the product failing; this caused subrogor damages.

15. These damages were the direct and proximate result of negligent acts and/or omissions by Defendant – itself and/or by and through its employees, agents, technicians, vendors, subcontractors, and/or servants acting in the course and scope of their duties – as follows:

    a.    failing to:

        i.    manufacture, assemble, sell, design, transport, distribute, test, and/or market a properly functioning product;

        ii.    properly inspect and/or test the product and/or its component parts;

        iii.    properly determine that the product and/or its component parts were not in compliance with applicable standards;

        iv.    provide safe and adequate warnings or instructions with the product; and/or

        v.    refrain from manufacturing, marketing, distributing and/or selling the product when it knew or should have known that it (and/or its component parts) would be inadequate for the reasons for which it was purchased.

    b.    failing to adequately instruct, supervise and/or train servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a);

    c.    failing to adequately warn subrogor, as well as others, of the dangers and hazardous conditions resulting from the conduct set forth in subparagraph

      (a) above;

   d.   failing to provide, establish, and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

   e.   failing to properly monitor the work of all agents and/or employees during the performance of the tasks set forth in subparagraph (a) above to ensure compliance with applicable safety procedures;

   f.   failing to retain competent, qualified and/or able agents, employees or servants to perform the tasks set forth in subparagraph (a) above;

   g.   failing to perform the tasks set forth in subparagraph (a) above in conformity with the prevailing industry and governmental specifications and standards; and/or

   h.   violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to this action.

16.    As a direct and proximate result of Defendant's aforementioned negligent acts or omissions, subrogor sustained and incurred damage to its property, as well as other consequential and incidental damages as described herein, in an in excess of $100,000.00.

17.    As described herein, Plaintiff became subrogated to the recovery rights and interests of subrogor, i.e. those asserted in this action.

## **COUNT II – BREACH OF EXPRESS AND IMPLIED WARRANTIES**

18.    Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

19.    Defendant expressly and/or impliedly warranted that the product was of merchantable quality, and was fit and safe for the foreseeable purpose for which it was designed, manufactured, sold and used.

20.    Based on the failure described herein, the product was not of merchantable quality,

and indeed was unfit and unsafe for the purposes for which it was designed, manufactured, sold and used.

21. Defendant expressly and/or impliedly warranted to design, manufacture, assemble, inspect, market, sell, and distribute the product in a fit, safe and operable condition for the foreseeable purposes for which it was designed, manufactured, assembled, inspected, marketed, sold, and distributed; Defendant having breached such warranties, subrogor sustained damages as described herein.

22. The product was at all times relevant hereto used for the purpose and in the manner for which it was intended, or for which Defendant could have reasonably foreseen it would be used, yet it failed due to Defendant having breached the aforesaid warranties.

23. Defendant, at all relevant times, was engaged in the business of, *inter alia*, designing, testing, inspecting, assembling, manufacturing, and distributing lines such as the product (as well as their component parts); Defendant specifically designed, tested, inspected, assembled, manufactured, distributed, and placed the product into the stream of commerce.

24. Defendant designed, manufactured, assembled, inspected, marketed, sold, and distributed the product in a defective condition that was unreasonably dangerous, defective and unsafe to consumers and unsafe for its intended use.

25. Defendant knew or should have known that the product would, and did, reach the subject property without substantial change from the condition in which it was originally designed, manufactured, assembled, inspected, marketed, sold, and distributed.

26. The product was unreasonably dangerous, defective and unsafe for its intended use and purpose.

27. Defendant thus breached the implied and express warranties and is liable for the

defect in the product, and the resultant damages caused by it, in that Defendant:

    a. placed the product into the stream of commerce when it knew, or should have known, that, through consumers' normal use of the product, the product would operate in such a manner so as to present an unreasonable risk of damage to consumers;

    b. distributed, sold and/or supplied a defectively designed and/or manufactured product that it knew, or should have known, would expose the subject property to an unreasonable risk of harm;

    c. failed to properly and adequately warn and instruct as to the safe and proper use of the product;

    d. failed to properly and adequately assemble, inspect and/or test the product;

    e. designed, manufactured, distributed, sold and/or supplied the product in such a manner so as to render it hazardous and dangerous for its contemplated and intended use;

    f. designed, manufactured, distributed, sold and/or supplied the product without proper safety features to prevent it from being hazardous and dangerous for its contemplated and intended use;

    g. failed to warn subrogor and others of the aforesaid defective and dangerous conditions that it knew or should have known existed and created an unreasonable risk of harm to the subject property;

    h. designed, manufactured, distributed, sold and/or supplied the product without proper safety devices rendering it hazardous and dangerous for its contemplated and intended use; and/or

    i. failed to use common state-of-the-art technology in designing the product when the use of such technology would have eliminated the defective and dangerous conditions aforementioned.

28. The aforementioned defects and/or defective conditions existed at the time the product left the possession and/or control of Defendant.

29. The defective, unreasonably dangerous, and unsafe conditions of the product as aforesaid was a direct and proximate cause of the damages sustained by subrogor.

30. The aforementioned breach(es) of warranties were a direct and proximate cause of

subrogor incurring damages as described herein in an amount in excess of $100,000.00.

31.     As described herein, Plaintiff became subrogated to certain rights and interests of subrogor, i.e. the recovery claims asserted in this action.

## COUNT III – STRICT LIABILITY

32.     Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

33.     Defendant is engaged, and at all times relevant hereto was engaged, in the business of designing, assembling, manufacturing, distributing, and selling, *inter alia*, lines such as the product, and specifically the product itself.

34.     Defendant designed, assembled, manufactured, and/or distributed the product in a defective condition, unreasonably dangerous to subrogor and its property.

35.     Defendant knew or should have known that the product would, and did, reach the consumer who owned the product without substantial change in the condition in which originally selected and sold.

36.     The aforementioned defects consisted of:

   a.   design defects;

   b.   manufacturing defects;

   c.   component defects;

   d.   use-instructions and/or warnings defects; and/or

   e.   a failure to warn of the design, manufacturing, and/or component defects, and/or properly provided warning and/or safe-use instructions.

37.     For these reasons, Defendant is strictly liable to subrogor under the applicable Restatement of Torts, as well as the applicable statutory and case law of the state and federal courts of Colorado.

38.     As a result of the damages directly and proximately caused by the product's unreasonably dangerous defects, subrogor sustained and incurred damages as described herein in an amount in excess of $100,000.00.

39.     Pursuant to the terms and conditions of the aforementioned policy, Plaintiff made payments consistent therewith, thereby becoming subrogated to the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in their favor and against Defendant, Brasscraft Manufacturing Company, for damages in an amount to be proven at the time of trial, for interest, costs and attorney fees allowable by law, and for such other relief as this Honorable Court shall deem appropriate under the circumstances..

PLAINTIFF DEMANDS TRIAL BY JURY.

Dated this 11th day of November, 2020.

Respectfully submitted,

POYNTER LAW LLC

*s/ Jennifer Poynter*
Jennifer A. Poynter - No. 24619
Taylor G. Minshall - No. 50478
ATTORNEY FOR PLAINTIFF

Plaintiff's Address:

2 Caufield Place
Newton, Pennsylvania 18940